UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

FIVE STAR AUDIOVISUAL, INC., an
Illinois corporation,

      Plaintiff,

v.

GUILLERMO WALBERTO MACHADO, a Florida
resident, RICHARD E. ABATI, a Florida resident,
and EVENT PRODUCTION MANAGEMENT
GROUP LLC, a Florida limited liability company,

      Defendants.

_____/

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Five Star AudioVisual, Inc. ("Five Star" or "Plaintiff"), commences this action against Guillermo Walberto Machado ("Machado"), Richard E. Abati ("Abati"), and Event Production Management Group LLC ("EPMG") (collectively "the Defendants"), seeking injunctive relief and damages arising out of Machado's breach of restrictive covenants and Abati and EPMG's tortious interference with Five Star's contractual rights. Five Star avers as follows:

### Causes of Action

1.    This is an action against: (a) Machado for breach of contract, namely, a Non-Compete and Nondisclosure Agreement (the "Machado Restrictive Covenant Agreement") that Machado executed with Five Star on August 31, 2020; (b) Abati for tortious interference with Five Star's contractual rights under the Machado Restrictive Covenant Agreement; and (c) EPMG for tortious interference with Five Star's contractual rights under the Machado Restrictive Covenant Agreement. Five Star seeks legal and equitable relief, including a preliminary and permanent

injunction, to remedy the contractual breaches (as to Machado) and tortious conduct (as to Abati and EPMG).  A true and correct copy of the Machado Restrictive Covenant Agreement is attached as "Exhibit A."

### The Parties

2. Five Star is a foreign corporation, organized under the laws of the State of Illinois.

3. Five Star has at all times relevant to this action maintained its principal place of business in Naperville, Illinois.

4. Five Star has at all times relevant to this action been registered, and authorized, to conduct business in the State of Florida.  Five Star has at all times relevant to this action conducted business in the State of Florida.

5. Robert Tippin founded Five Star in 1995.  Mr. Tippin remains the President of Five Star.

6. Five Star is engaged in the highly competitive business of providing experiential production services and quality audiovisual equipment to hotels and resorts, and individual and corporate clients throughout the United States, including virtual reality renderings, experiential meeting environments, professional sound reinforcement, projection, lighting, video recording, video playback and projection, rigging services, computer data display, flipcharts, related supplies and accessories, other specialty rental products, and technician labor based on customer, guest or patron request.

7. Five Star's hotel-based operations, which are at issue in this action, serve two (2) clients. The first client is the hotel with which Five Star contracts to provide on-site audiovisual and related services for individuals and organizations holding events at the hotel (the "Hotel

2

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

#11517429 v2

Clients"). The second client is the individual or organization holding the event at the hotel, to whom Five Star delivers the on-site audiovisual services ("End Clients").

8. Per the Division of Corporations, Florida Department of State, including an Annual Report filed on April 18, 2022, EPMG is a Florida limited liability company with a principal address of 3936 Palmarito Street, Coral Gables, Florida, 33134.

9. EPMG filed its Articles of Organization in Florida on or about November 3, 2021, with an effective date of November 9, 2021.

10. EPMG offers and provides services that compete with the services offered and provided by Five Star. EPMG's ability to compete is facilitated by its improper use of confidential information learned by Machado and Abati during their employment with Five Star, such confidential information which is not generally known to the public includes, without limitation, the following: (a) specialized training provided by Five Star to Machado and Abati; (b) the identity of Five Star's past, current, and prospective clients (both Hotel Clients and End Clients); (c) client data, including their preferences (i.e. historical requirements, likes, and dislikes), costs, budgets, profitability, and equipment needs of Five Star's clients; (d) Five Star's pricing structure and profit margins; and (e) Five Star's proprietary event marketing software programs, Galileo, Constellation, and Navion, used to secure business from End Clients.

11. Machado is a resident and citizen of the State of Florida and, upon information and belief, resides in Coral Gables, Florida.

12. Machado is a Manager of EPMG and has been a Manager of EPMG since EPMG filed its Articles of Organization in Florida on or about November 3, 2021.

13. Abati is a resident and citizen of the State of Florida and, upon information and belief, resides in Destin, Florida.

3
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

#11517429 v2

14. Abati is a Manager of EPMG and has been a Manager of EPMG since EPMG filed its Articles of Organization in Florida on or about November 3, 2021.

15. Abati signed EPMG's Articles of Organization, as an authorized representative of EPMG, on or about November 3, 2021.

16. On information and belief, EPMG's only two members are Machado and Abati, and neither is a resident or citizen of the State of Illinois.

## Jurisdiction & Venue

17. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because: (a) the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs; and (b) there is complete diversity of citizenship -- Five Star is a citizen of the State of Illinois, Machado is a citizen of the State of Florida, Abati is a citizen of the State of Florida, and EPMG (by virtue of the citizenship of Machado and Abati) is a citizen of the State of Florida.

18. Defendants are subject to general personal jurisdiction in this Court because: (a) Machado is a Florida resident; (b) Abati is a Florida resident; and (c) EPMG is a Florida limited liability company that maintains its principal place of business in Florida and conducts business in Florida.

19. Venue is proper in this judicial district, the Southern District of Florida, Miami Division, pursuant to 28 U.S.C. § 1391 because: (a) Machado resides in this judicial district and all Defendants are residents of the State of Florida; and (b) a substantial part of the events or omissions giving rise to the claims stated herein occurred in this judicial district.

4
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

#11517429 v2

**Machado's Employment with Five Star**

20. Machado commenced employment with Five Star on or about October 1, 2020, in the position Director of Event Production.

21. With the exception of a period of approximately 2 months during which Machado worked for Five Star at The Ritz-Carlton, Fort Lauderdale, Machado worked for Five Star at The Ritz-Carlton Key Biscayne, a luxury hotel located at 455 Grand Bay Drive, Key Biscayne, Miami, Florida 33149 ("The Ritz"), throughout his employment with Five Star.

22. Five Star entered into a contractual relationship with The Ritz on or about October 1, 2020. Under that contract, Five Star is the sole on-site provider of audiovisual services to individuals and organizations holding events at The Ritz.

23. As the on-site Director of Event Production for Five Star at The Ritz, Machado's job duties included, without limitation: (a) developing relationships with personnel at The Ritz, including the sales and leadership teams at The Ritz, and using The Ritz' confidential pricing and technology options to market and provide optimal audiovisual services to End Clients; (b) developing relationships with End Clients who seek to utilize Five Star's audiovisual services at The Ritz; (c) pre-event planning and marketing as the audiovisual point-of-contact for all potential End Clients interested in scheduling events at The Ritz; (d) pre-event audiovisual equipment set-up and testing; (e) leading all day-of-event audiovisual operation and coordination; and (f) post-event debriefing with the End Client and The Ritz' sales representative to discuss issues and solutions for future events.

24. In addition, as the Director of Event Production at The Ritz, Machado's duties and responsibilities included managing of all of Five Star's on-site audiovisual employees and staff (including event-specific independent contractors) at The Ritz.

5

Stearns Weaver Miller Weissler Alhadeff & Sitterson, p.a.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

#11517429 v2

25. Five Star paid Machado an annualized base salary of $76,000 between Machado's date of hire and the date of his separation of employment on December 22, 2021.

26. Upon acceptance of the offer of employment by Five Star, Machado executed the Machado Restrictive Covenant Agreement. In doing so, Machado agreed, in relevant part, as follows:

    a. that, pursuant to Section 1 of the Machado Restrictive Covenant Agreement, he would faithfully render services delegated to him by Five Star;

    b. that, pursuant to Section 1 of the Machado Restrictive Covenant Agreement, he would devote his entire business time, good faith, best efforts, ability, skill and attention to Five Star's business;

    c. that, pursuant to Section 2 of the Machado Restrictive Covenant Agreement, he would keep secret and confidential, and not use or disclose to any third parties, any proprietary or confidential business information belonging to Five Star;

    d. that, pursuant to Section 2 of the Machado Restrictive Covenant Agreement, he would treat as secret and confidential information regarding Five Star's customers and prospective customers (including information about their preferences, requirements, likes, and dislikes), costs, budgets, profitability, sales and marketing strategies, pricing policies, operational methods, strategic plans, training materials, internal financial information, and research and development plans and activities, so long as such information is not generally known to the public (collectively "Confidential Information");

    e. that, pursuant to Section 3(A) of the Machado Restrictive Covenant Agreement, during his employment with Five Star, and for a period of two (2) years thereafter, he would not, directly or indirectly, on his own behalf or on behalf of another individual or entity,

6
Stearns Weaver Miller Weissler Alhadeff & Sitterson, p.a.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

#11517429 v2

"provide at or within a twenty (20) mile radius of any location at which Employee [Machado] worked during Employee's [Machado's] last two (2) years of employment with Five-Star, any audiovisual services, including but not limited to, the supplying of audiovisual, computer-video, lighting and audio reinforcement equipment and related services and personnel . . . ."

      f.    that, pursuant to Section 3(C) of the Machado Restrictive Covenant Agreement, during his employment with Five Star, and for a period of two (2) years thereafter, he would not, directly or indirectly, on his own behalf or on behalf of another individual or entity, provide any audiovisual services (including, but not limited to the supplying of audiovisual, computer-video, lighting and audio reinforcement equipment and related services and personnel) "to any customer of Five-Star with whom Employee [Machado] dealt during Employee's [Machado's] employment with Five-Star or about whom Employee [Machado] acquired any confidential information while Employee [Machado] was employed by Five-Star."

27.    Five Star also provides audiovisual services for The Ritz-Carlton, Coconut Grove, 3300 SW 27th Avenue, Miami, Florida 33133, which is approximately 10 miles from The Ritz on Key Biscayne, Florida.

28.    By executing the Machado Restrictive Covenant Agreement, Machado acknowledged and agreed that the restraints set forth in Section 3 of the Machado Restrictive Covenant Agreement "are reasonable as a result of Five-Star's legitimate business interests in protecting its confidential information, customer goodwill, and employee relationships, and the limited scope of the restrictions in Section 3."

29.    By executing the Machado Restrictive Covenant Agreement, Machado acknowledged that the harm to Five Star's business arising out of Machado's non-compliance with Sections 2 or 3 of the Machado Restrictive Covenant Agreement "would be largely irreparable."

7
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

#11517429 v2

Accordingly, pursuant to Section 6 of the Machado Restrictive Covenant Agreement, Five Star is entitled to legal and equitable relief, including, without limitation, preliminary and permanent injunctive relief, restraining any breach or threatened breach by Machado.

30. The restrictions set forth in the Machado Restrictive Covenant Agreement are reasonable, narrowly tailored, and necessary to protect Five Star's legitimate business interests in its confidential and proprietary information, client goodwill (both with Hotel Clients and End Clients), client and prospective client relationships, and training provided to Five Star employees.

31. The Machado Restrictive Covenant Agreement is governed by Illinois law.

**Machado's Specialized Training and Five Star's Confidential Information**

32. To gain an advantage over its competitors, Five Star expends substantial time, effort, and resources developing and maintaining its: (a) substantial client relationships and goodwill with Hotel Clients (such as The Ritz) and End Clients, (b) confidential business information not generally known to the public, which includes, without limitation, the identity of Five Star's past, current, and prospective clients (both Hotel Clients and End Clients); client data, including their preferences (i.e. historical requirements, likes, and dislikes), costs, budgets, profitability, and equipment needs of Five Star's clients; and Five Star's pricing structure and profit margins, and (c) proprietary event marketing software programs used to solicit business from End Clients.

33. Five Star accomplishes these goals, in part, by providing its employees, including Machado, with specialized training in the use and implementation of its proprietary software and its confidential institutional knowledge.

34. During Machado's employment with Five Star, Five Star provided Machado with specialized, extensive training in the following areas: (a) training on its proprietary Experiential

8
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

#11517429 v2

Method Certification program, during which Machado received confidential information about Five Star's scientific and multi-sensory approach to audiovisual event production; (b) training on Five Star's proprietary Client Relations Management ("CRM") database, called AvStar, which contains confidential business information and institutional data used to strategically solicit and maintain Hotel Clients and End Clients; and (c) training on Five Star's proprietary event marketing software programs, Galileo, Constellation, and Navion, which Machado used to create advanced event proposals, videos, and digital renderings used to secure business from End Clients.

35. In addition, as Five Star's Director of Event Production at The Ritz, Machado had "read and print" privileges to access The Ritz's CRM database, which meant that he could view all client data, including the pricing, profit margins, and audiovisual equipment and service needs for all End Clients who held past events at The Ritz.

36. Moreover, as a Director of Event Production, Machado had access to all of the AvStar CRM data from all of Five Star's partner locations, including the confidential client data from all of Five Star's Hotel Clients, including The Ritz-Carlton, Coconut Grove.

### The PSAV Lawsuit

37. On October 8, 2020, Machado received a cease and desist letter from counsel representing the company that employed Machado immediately prior to Five Star, namely Audio Visual Services Group, LLC d/b/a PSAV ("PSAV"). PSAV sought to enforce restrictive covenants (including non-compete and non-solicitation covenants) set forth in an Employment Agreement that Machado and PSAV executed on or about June 19, 2017, such covenants which Machado allegedly breached by accepting employment with Five Star in a position at The Ritz.

38. On December 11, 2020, PSAV filed in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Case No. 2020-026655-CA-01, a Complaint and

9
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

#11517429 v2

an Ex Parte Motion for Temporary and/or Preliminary Injunction (the "PSAV Lawsuit") against Machado individually (and another former PSAV employee, Evan McQuide) seeking to enforce the restrictive covenants in Machado's Employment Agreement with PSAV (and seeking to prevent Machado from servicing clients at The Ritz for Five Star for a restrictive period of one (1) year).

39. Without any obligation to do so, Five Star funded Machado's legal defense in his litigation against PSAV, thereby providing additional consideration to support the restrictive covenants set forth in the Machado Restrictive Covenant Agreement with Five Star.

40. After more than a year of litigation, on December 13, 2021, the parties to the PSAV Lawsuit filed a Joint Stipulation of Dismissal with Prejudice.

41. Five Star spent $134.061.00 to provide Machado and Mr. McQuide a defense in the litigation with PSAV. Five Star incurred and paid this entire sum during Machado's employment with Five Star.

**Machado Resigned From Five Star as the PSAV Litigation Came to an End**

42. On December 9, 2021, 4 days before the parties to the PSAV Lawsuit filed their Joint Stipulation of Dismissal, Machado unexpectedly submitted a letter of resignation to Five Star, with an effective date of December 22, 2021. A true and correct copy of Machado's resignation is attached as "Exhibit B."

43. In response to Machado's resignation letter, on December 20, 2021, Five Star sent a letter to Machado, signed by Mr. Tippin, accepting Machado's resignation and reminding Machado of his post-employment restrictive covenants. A true and correct copy of Five Star's December 20, 2021 letter is attached as "Exhibit C."

10
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

#11517429 v2

44. Five Star's letter, attached as "Exhibit C," stressed to Machado that "[Five-Star] will take all action necessary to protect its legitimate business interests and enforce its rights under the Non-Compete and Nondisclosure agreements you executed at the commencement of your employment with Five-Star on September 2, 2020."

45. Machado resigned from his employment with Five Star approximately 5 weeks after EPMG filed its Articles of Organization with the Florida Department of State, Division of Corporations, listing Machado and Abati as managers. Machado and Abati organized EPMG to compete with Five Star.

### Richard Abati's Employment

46. Richard Abati commenced employment with Five Star on or about July 1, 2021 as the Director of Event Production at the Hilton Sandestin in Miramar Beach, Florida.

47. Like Machado, Abati, on June 22, 2021, executed a Non-Compete and Nondisclosure Agreement with Five Star, a copy of which is attached as "Exhibit D") (the "Abati Restrictive Covenant Agreement").  The restrictions set forth in the Abati Restrictive Covenant Agreement are identical to the restrictions set forth in the Machado Restrictive Covenant and are reasonable, narrowly tailored, and necessary to protect Five Star's legitimate business interests in its confidential information, client goodwill (both with the Hotel Clients and the End Clients), client and prospective client relationships, and training provided to Five Star employees.

48. During Abati's employment with Five Star, Five Star provided Abati with substantially the same specialized training that it provided other Directors of Event Production (including Machado), which included, as discussed in further detail above: (a) training on Five Star's proprietary Experiential Method Certification program, (b) training on Five Star's CRM database AvStar; and (c) training on Five Star's proprietary event marketing software programs.

11
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

#11517429 v2

49. On or about March 30, 2022, Abati tendered to Five Star his resignation of employment.

50. Abati resigned from his employment with Five Star approximately 21 weeks after EPMG filed its Articles of Organization with the Florida Department of State, Division of Corporations, listing Machado and Abati as managers.

51. Abati and Machado organized EPMG to compete with Five Star.

### The Dechert LLP Event at The Ritz

52. Dechert LLP ("Dechert") is an international law firm and one of Five Star's End Clients. Dechert hosts an annual retreat at The Ritz (the "Dechert Event"), for which Five Star provided audiovisual equipment and services between approximately April 26, 2022 and May 2, 2022.

53. Five Star generated in excess of $100,000 in revenue for the Dechert Event held at The Ritz between April 26, 2022 and May 2, 2022.

### Machado's Breach of the Machado Restrictive Covenant Agreement

**a) Machado's Breach of Section 3(A): The Non-competition Agreement**

54. On or about February 9, 2023, Five Star learned of Machado's breach of the Machado Restrictive Covenant Agreement. Machado and Abati brazenly informed Five Star's current Director of Event Production at The Ritz, Jesse Yurman, that EPMG contracted with Dechert to provide audiovisual services for Dechert's event to be held at The Ritz between April 18, 2023 and April 24, 2023.

55. Machado is in breach of the non-competition covenant in Section 3(a) of the Machado Restrictive Covenant Agreement because he is providing audiovisual services at, and within a 20 mile radius of, The Ritz, the location at which he worked as a Five Star employee.

12
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

#11517429 v2

### b) Machado's Breach of Section 2: Misappropriation of Five Star's Confidential Information

56. Since Machado's separation from employment, Five Star has also discovered that Machado breached Section 2 of the Machado Restrictive Covenant Agreement by misappropriating Five Star's confidential and proprietary information for his benefit and for his competing business's benefit.

57. Upon information and belief, Machado misappropriated Five Star's confidential and proprietary information, including, but not limited to, The Ritz's CRM data, and more significantly, Five Star's CRM data, which includes client lists and historical data (for all of Five Star's Hotel Clients and End Clients) reflecting all previous sales, pricing, budgets, margins, client preferences and needs, equipment usage, and other confidential financial and operational event production data.

58. Five Star has taken necessary and reasonable measures to protect its confidential information by limiting its access to leadership positions (such as Machado's on-site Director of Event Production position) within Five Star, and by implementing password protections to ensure that access to confidential information is restricted to those leadership employees who maintain positions of trust within Five Star.

59. Moreover, Five Star has taken appropriate action to protect its confidential information by utilizing reasonable, necessary, and narrowly tailored restrictive covenant agreements, such as the Machado Restrictive Covenant Agreement, for employees in leadership positions who have password-protected access to such information.

60. Upon information and belief, Machado is using Five Star's confidential information, including Five Star's CRM data, to solicit Five Star clients, and has used such

13

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

#11517429 v2

information to undercut Five Star's pricing and successfully solicit Dechert for the upcoming Dechert Event at The Ritz.

61. Abati and EPMG are, and at all relevant times have been, aware of the restrictions set forth in the Machado Restrictive Covenant Agreement, but have willfully, wrongfully, and tortiously interfered with such restrictions by: (1) aiding, abetting, and assisting Machado's misappropriation and improper use of Five Star's confidential information, and (2) providing audiovisual services at, and within a 20 mile radius of, The Ritz, the location at which Machado worked as a Five Star employee.

62. Machado, Abati, and EPMG have and/or will benefit financially from their contractual breaches (as to Machado) and tortious interference (as to Abati and EPMG).

63. Five Star has retained undersigned counsel to enforce its contractual and common law rights set forth in this action and is obligated to pay undersigned a reasonable fee and costs in connection with this action.  Pursuant to Section 10 of the Machado Restrictive Covenant Agreement, Machado "shall be liable for any reasonable attorneys' and expert witness fees and costs incurred by Five-Star" in connection with Five Star's enforcement of its rights under the Machado Restrictive Covenant Agreement.

## COUNT I
## BREACH OF CONTRACT AGAINST MACHADO

64. Five Star re-alleges and incorporates herein by reference the allegations in paragraphs 1 through 63 as fully set forth above.

65. Five Star and Machado are parties to the Machado Restrictive Covenant Agreement, which is a binding and enforceable contract.

14
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

#11517429 v2

66. Under Section 2 of the Machado Restrictive Covenant Agreement, Machado agreed that he would keep secret, and not use or disclose to any third-party, Five Star's confidential business information regarding Five Star's customers and prospective customers (including information about their preferences, requirements, likes, and dislikes), costs, budgets, profitability, sales and marketing strategies, pricing policies, operational methods, strategic plans, training materials, internal financial information, and research and development plans and activities.

67. Under Section 3(A) of the Machado Restrictive Covenant Agreement, Machado agreed that he would not, during his employment or for a period of two (2) years thereafter, provide audiovisual related services at or within a twenty (20) mile radius of any location at which Machado worked during his last two (2) years of employment with Five Star.

68. Upon information and belief, and as more specifically alleged above, Machado breached the Machado Restrictive Covenant Agreement by: (1) misappropriating Five star's confidential and proprietary information, which not generally known to the public, and (2) providing audiovisual related services at The Ritz within the restrictive period.

69. Five Star has been, and will continue to be, damaged as a result of Machado's breach of the Machado Restrictive Covenant Agreement.

70. The restrictions set forth in the Machado Restrictive Covenant Agreement are reasonable, necessary, and narrowly tailored to protect two or more of Five Star's legitimate business interests.

71. Unless Machado is enjoined, directly and indirectly, from breaching the Machado Restrictive Covenant Agreement, Five Star will continue to suffer immediate and irreparable harm.

72. Indeed, Machado expressly acknowledged that Five Star would be irreparably harmed in the event Machado breached either Section 2 or 3 thereof.

15
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

#11517429 v2

73. Because Machado has breached Sections 2 and 3(A) of the Machado Restrictive Covenant Agreement, and because Five Star has been (and will continue to be) irreparable harmed, and because there is no adequate remedy at law, Five Star is entitled to injunctive relief in addition to the recovery of legal relief (damages).

**WHEREFORE**, Plaintiff Five Star respectfully requests that the Court:

a. Enter a preliminary and permanent injunction enjoining and restraining Machado, directly or indirectly, personally or through EPMG, Abati, or any other individual or entity, his/their agents, servants, staff, and all others in active concert or participation with him/them, from providing audiovisual services within a 20 mile radius of The Ritz for a period of 2 years, and from soliciting or accepting audiovisual related business from any Five Star customer with whom Machado dealt at The Ritz, or about whom Machado acquired confidential information, for a period of 2 years;

b. Order an accounting to determine all compensation, profits, monies, accruals, increments or other benefits derived or received by Machado as the result of any transactions constituting a breach of the Machado Restrictive Covenant Agreement or any of the restrictive covenants contained therein and ordering the transfer of such funds to Five Star;

c. Enter a judgment in Five Star's favor and against Machado for damages incurred as a result of the breaches, including a disgorgement of all compensation, profits, monies, accruals, increments or other benefits derived or received by Machado, directly or indirectly, as the result of the breaches, including accrued and accruing interest, and pre-judgment and post-judgment interest;

d. Award Five Star its attorneys' fees and costs pursuant to Section 10 of the Machado Restrictive Covenant Agreement; and

e. Award any further relief the Court deems just and proper, including any incidental damages.

## COUNT II
## TORTIOUS INTERFERENCE WITH MACHADO'S
## CONTRACTUAL OBLIGATIONS AGAINST EPMG

74. Five Star re-alleges and incorporates by reference the allegations of paragraphs 1 through 63 as fully set forth above.

16

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

#11517429 v2

75. Five Star and Machado are parties to the Machado Restrictive Covenant Agreement, which is a binding contract.

76. EPMG had knowledge of the Machado Restrictive Covenant Agreement. Indeed, Machado was the founder of EPMG.

77. EPMG intentionally, unjustifiably, and wrongfully procured Machado's breach of the Machado Restrictive Covenant Agreement by aiding and abetting Machado to breach the Machado Restrictive Covenant Agreement.

78. EPMG continues to tortiously interfere with Machado's contractual obligations and Five Star's contractual rights. More specifically, EPMG, with knowledge of Machado's obligations and Five Star's contractual rights, continues to intentionally, unjustifiably, and wrongfully interfere with Machado's obligations under Sections 2 and 3 of the Machado Restrictive Covenant Agreement.

79. EPMG's unlawful and wrongful actions are devoid of any justification or privilege.

80. Five Star has been damaged by EPMG's tortious interference.

**WHEREFORE**, Plaintiff Five Star respectfully requests that the Court:

  a. Enter a judgment in Five Star's favor and against EPMG for damages incurred as a result of the tortious interference, including past and future lost profits, accrued/accruing interest, pre-judgment and post-judgment interest;

  b. Enjoin EPMG, its agents, servants, staff, and attorneys and all others in active concert or participation with it from engaging in further unlawful conduct;

  c. Grant Five Star such further relief as this Court deems just and proper. Five Star reserves its right to assert a claim for punitive damages arising from EPMG's tortious conduct consistent with Florida law.

17
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

#11517429 v2

# COUNT III
# TORTIOUS INTERFERENCE WITH MACHADO'S
# CONTRACTUAL OBLIGATIONS AGAINST ABATI

81. Five Star re-alleges and incorporates by reference the allegations of paragraphs 1 through 63 as fully set forth above.

82. Five Star and Machado are parties to the Machado Restrictive Covenant Agreement, which is a binding contract.

83. Abati had knowledge of the Machado Restrictive Covenant Agreement.

84. Abati with knowledge of Machado's obligations and Five Star's contractual rights, continues to intentionally, unjustifiably, and wrongfully interfere with Machado's obligations under Sections 2 and 3 of the Machado Restrictive Covenant Agreement.

85. Abati's unlawful actions are devoid of any justification or privilege.

86. Five Star has been damaged by Abati's tortious interference.

**WHEREFORE**, Plaintiff Five Star respectfully requests that the Court:

a. Enter a judgment in Five Star's favor and against Abati for damages incurred as a result of the tortious interference, including past and future lost profits, accrued/accruing interest, pre-judgment and post-judgment interest;

b. Enjoin Abati, his afilliates, agents, servants, staff, and attorneys and all others in active concert or participation with him from engaging in further unlawful conduct;

c. Grant Five Star such further relief as this Court deems just and proper. Five Star reserves its right to assert a claim for punitive damages arising from Abati's tortious conduct consistent with Florida law.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all counts so triable.

18
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

#11517429 v2

Dated: March 16, 2023

Respectfully submitted,

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, FL 33130
Telephone: (305) 789-3200
Fax:  (305) 789-3395

By: /s/ *Andrew Rodman*
    ANDREW L. RODMAN, ESQ.
    Florida Bar No.: 0192198
    arodman@stearnsweaver.com
    Secondary: mbittner@stearnsweaver.com
    THOMAS RAINE, ESQ.
    Florida Bar No.: 1025637
    traine@stearnsweaver.com

***Attorneys for Plaintiff***

19
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

#11517429 v2

## VERIFICATION

I, Robert Tippin, am Founder and President of Five Star Audiovisual, Inc. ("Five Star"), and have been authorized to execute this Verification on behalf of Five Star. The information contained in the foregoing Verified Complaint for Injunctive Relief and Damages (the "Complaint") is based upon my personal knowledge, or personal knowledge of the business memoranda, reports, data compilation, or records of Five Star, of acts, events, or conditions, kept in the ordinary course of regularly conducted business activity of Five Star and the regular practice of Five Star to make such memoranda, reports, data compilation, or records, at or near the time of the events described therein, by or from information transmitted by persons with knowledge of the events, transmitted to me, and kept under my custody and control. Under penalties of perjury, I declare that I have read the forgoing Complaint and based upon my personal knowledge or review of the aforesaid business memoranda, reports, data compilation, or records, the allegations and facts set forth in the Complaint are true.

By: _____
ROBERT TIPPIN

DATED:   March 15, 2023.

20
STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

#11517429 v1